MC5QiwoP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA
 3
              v.                          22 CR 652 (ER)
 4                                            Plea

 5   OBIOMA IWOBI

 6              Defendant
     ------------------------------x
 7
                                     New York, N.Y.
 8                                   December 5, 2022
                                     11:10 a.m.
 9

10   Before:

11                  HON. EDGARDO RAMOS
                                      District Judge
12

13                      APPEARANCES

14   DAMIAN WILLIAMS
          United States Attorney for the
15        Southern District of New York
     JOSIAH PERTZ
16        Assistant United States Attorney

17   OKEKE & NWOKORO LLP
          Attorney for Defendant
18   PATRICK OKEKE

19   ALSO PRESENT
     VIOSANY HARRISON, USPT (SDNY)
20   JUSTIN ELLARD, Special Agent (USAO - SDNY)

21

22

23

24

25
```

MC5QiwoP

```
 1              (In open court; case called)
 2              DEPUTY CLERK:  Counsel, please state your name for the
 3    record.
 4              MR. PERTZ:  Good morning, your Honor.  Josiah Pertz
 5    for the government.  Here with me is AUSA Special Agent Justin
 6    Ellard.
 7              THE COURT:  Good morning.
 8              Who else is at the table?
 9              MS. HARRISON:  Pretrial Services.  Viosany Harrison
10    for pretrial.
11              THE COURT:  Good morning.
12              MR. OKEKE:  Good morning, your Honor.  Patrick Okeke,
13    O-K-E-K-E, for the defendant, Mr. Iwobi.
14              THE COURT:  Good morning to you all.
15              Mr. Pertz, what are we doing?  By the way, you can
16    remain seated.  You don't have to stand.
17              MR. PERTZ:  Thank you, your Honor.
18              The defendant is appearing today before the Court for
19    the first time and would like to plead to an information.
20              THE COURT:  How do I pronounce your last name, sir?
21    Iwobi?
22              THE DEFENDANT:  Yes, sir.
23              THE COURT:  Mr. Iwobi -- first of all, let me confirm
24    with Mr. Okeke.
25              MR. OKEKE:  Yes.
```

MC5QiwoP

1          THE COURT:  Do you confirm that Mr. Iwobi wishes to

2     plead guilty pursuant to an information?

3          MR. OKEKE:  Yes, your Honor.

4          THE COURT:  Very well.

5          Mr. Iwobi, your attorney has advised me that you wish

6     to plead guilty.  I'm happy to take your plea, but before I do

7     that, I need to ask you a series of questions, and, in

8     particular, I'm trying to determine in the first instance that

9     you understand what is going on here today and the consequences

10    of pleading guilty.

11         I'm also trying to determine whether you are in fact

12    guilty of the crime to which you wish to plead guilty.  In

13    order to make those determinations, I need to ask you a series

14    of questions, and it is vitally important that you be

15    absolutely truthful, so I'm going to place you under oath,

16    okay?

17         (Defendant sworn)

18         THE COURT:  Mr. Iwobi, you may be seated and you may

19    remain seated for the balance of this proceeding.

20         First of all, sir, you are now under oath, and do you

21    understand that if you answer any of my questions falsely, your

22    answers could be used against you in a prosecution for perjury

23    or for making a false statement?

24         THE DEFENDANT:  Yes, my lord.

25         THE COURT:  Now, as I indicated, I'm going to ask you

MC5QiwoP

1   some questions.  If I ask you a question and you don't

2   understand it, just let me know that, and I'll rephrase it.  Or

3   if I ask you a question and you wish to speak with your

4   attorney before you answer it, you can let me know that, and

5   I'll accommodate you, okay?

6           THE DEFENDANT:  Yes, my lord.

7           THE COURT:  I'm going to start with some background

8   questions.  Sir, what is your full name?

9           THE DEFENDANT:  Obioma Iwobi.

10          THE COURT:  How old are you, sir?

11          THE DEFENDANT:  42 years old.

12          THE COURT:  How far did you get in school?

13          THE DEFENDANT:  A master's.  I dropped out of a

14   master's degree.  Well, I have my bachelor's, then dropped out

15   of my master's, yeah.

16          THE COURT:  Are you able to read and write in English?

17          THE DEFENDANT:  Correct.  Yes.

18          THE COURT:  Are you now or have you recently been

19   under the care of a doctor or psychiatrist?

20          THE DEFENDANT:  No.

21          THE COURT:  Have you ever been treated or hospitalized

22   for any mental illness or any type of addiction, including drug

23   or alcohol addiction?

24          THE DEFENDANT:  Alcohol, anxiety, though -- but not

25   diagnosed with alcoholism though.

MC5QiwoP

1      THE COURT:  So have you ever been in a program for

2  alcoholism?

3      THE DEFENDANT:  No.

4      THE COURT:  In the past 24 hours, have you taken any

5  drugs, medicine, or pills, or have you consumed any alcohol?

6      THE DEFENDANT:  No.

7      THE COURT:  Is your mind clear today?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  Mr. Iwobi, are you feeling well enough to

10  proceed and to understand what is going on here today?

11      THE DEFENDANT:  Yes, my lord.  Yeah.

12      THE COURT:  Now, sir, your attorney has informed me

13  that you wish to waive indictment and enter a plea of guilty.

14  Is that correct?

15      THE DEFENDANT:  Yes, my lord.

16      THE COURT:  Sir, have you had a full opportunity to

17  discuss your case with Mr. Okeke, including any possible

18  defenses that you might have?

19      THE DEFENDANT:  I'm sorry, repeat that one more time,

20  your Honor?

21      THE COURT:  Yes, sir.

22      Have you had a full opportunity to discuss your case

23  with your attorney, including any possible defenses that you

24  might have?

25      THE DEFENDANT:  Yes, your Honor.

MC5QiwoP

1        THE COURT:  And have you had a full opportunity to

2    discuss with him the consequences of entering a plea of guilty?

3        THE DEFENDANT:  Yes, my lord.

4        THE COURT:  Sir, are you satisfied with Mr. Okeke and

5    his representation of you?

6        THE DEFENDANT:  Yes, my lord.  Yes.

7        THE COURT:  Now, does either counsel have any doubt as

8    to Mr. Iwobi's competence to waive indictment and enter a plea

9    of guilty at this time?

10        MR. PERTZ:  No, your Honor.

11        MR. OKEKE:  No, your Honor.

12        THE COURT:  On the basis of Mr. Iwobi's answers to my

13    questions and my observations of his demeanor, I find that he

14    is fully competent to waive indictment and enter a guilty plea

15    at this time.

16        The first thing that we need to deal with, sir, is --

17    do we have the waiver of indictment?

18        Is this the waiver?  Sir, have you received a copy of

19    the information in this case?

20        THE DEFENDANT:  Yes, sir.  Yes, your Honor.

21        THE COURT:  And have you discussed the information

22    with your attorney?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  Sir, do you understand that this

25    information is a felony information?

MC5QiwoP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And, sir, because the charges in this

3    information are serious, indeed, they are felonies, you have a

4    constitutional right to require the government to present

5    evidence to a grand jury to see whether the grand jury would

6    vote to charge you with that offense.  Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Mr. Iwobi, do you understand that a grand

9    jury is a group that is made up of at least 16, but not more

10    than 23, citizens, and at least 12 of them would have to agree

11    that there was probable cause to believe that this crime was

12    committed and that you committed it before you could be

13    indicted for this crime.  Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  And if the grand jury voted to charge you,

16    the document they issue would be called an indictment, and it

17    would be signed both by the foreperson of the grand jury and by

18    the U.S. Attorney.  Do you understand that?

19          THE DEFENDANT:  Yes, my lord.

20          THE COURT:  And, Mr. Iwobi, do you wish to have your

21    case presented to the grand jury -- or, rather, do you wish to

22    give up your right to have your case presented to the grand

23    jury?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  And did you discuss that decision

MC5QiwoP

```
 1    thoroughly with your lawyer?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  Now, I have been provided with a document

 4    called a waiver of indictment dated November 11 of 2022.  It

 5    has a couple of signatures, including one that purports to be

 6    yours.  Can you see that from where you are seated?

 7              THE DEFENDANT:  Yes, your Honor.

 8              THE COURT:  Is that your signature on this document?

 9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  This will be marked Court Exhibit 1.

11              Sir, when you signed this document, did you sign it

12    voluntarily?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  And before you signed it, did you discuss

15    it with your attorney?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  When you signed it, did you understand

18    that you were acknowledging your willingness to give up your

19    right to be indicted by a grand jury?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Did anyone threaten you or force you to

22    give up that right?

23              THE DEFENDANT:  No, your Honor.

24              THE COURT:  Very well.  I find that Mr. Iwobi has

25    knowingly and voluntarily waived his right to be indicted by
```

MC5QiwoP

1    the grand jury, and the information will be accepted for

2    filing.

3              Mr. Okeke, do you wish me to read the information

4    publicly?

5              MR. OKEKE:  No, your Honor.  I'll waive it.

6              THE COURT:  Very well.

7              Mr. Iwobi, do you understand that you are charged in

8    the information with conspiracy to commit wire fraud?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Mr. Pertz, what are the elements of that

11   offense?

12             MR. PERTZ:  In order to prove the defendant guilty of

13   conspiracy to commit wire fraud, the government would have to

14   prove the following elements beyond a reasonable doubt:

15             First, the defendant conspired with at least one other

16   person to commit wire fraud; and,

17             Second, the defendant did so knowingly and @willfully.

18             The elements of wire fraud under Title 18 U.S. Code,

19   Section 1343 are as follows:

20             First, there was a scheme or an artifice to defraud or

21   to obtain money or property by materially false and fraudulent

22   pretenses, representations or promises.

23             Second, that the defendant knowingly and willfully

24   participated in the scheme or artifice to defraud with

25   knowledge of its fraudulent nature and with specific intent to

MC5QiwoP

1  defraud or that he knowingly and intentionally aided and

2  abetted others in the scheme.

3          Third, that in execution of that scheme, the defendant

4  used or caused the use of interstate wires, and, in addition,

5  the government would have to prove by a preponderance that

6  venue is proper in the Southern District of New York.

7          THE COURT:  Thank you, Mr. Pertz.

8          Mr. Iwobi, did you hear what the prosecutor said?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Sir, do you understand that if you did not

11  plead guilty to this count, the government would have to prove

12  each and every one of those elements beyond a reasonable doubt

13  at trial?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Mr. Iwobi, have you discussed with

16  Mr. Okeke the possible punishment that you face if you were to

17  plead guilty to this charge?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  So, do you understand that this charge

20  carries a maximum term of imprisonment of 20 years?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  And a maximum term of supervised release

23  of three years?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  And, in addition, there are financial

MC5QiwoP

1    penalties, including a $100 special assessment, which I must

2    impose, and a fine that I could impose that can be the higher

3    of either $250,000 or twice the gross gain from the offense or

4    the twice the gross loss to any victim of the offense.  Do you

5    understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  And I mentioned the term supervised

8    release.  Do you understand that supervised release means that

9    you will be subject to monitoring and supervision when you are

10   released from prison, if you are sentenced to a prison term?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  And that there are terms and conditions of

13   supervised release with which you must comply.  And if you do

14   not comply with them, you could be returned to prison without a

15   jury trial.  Do you understand?

16             THE DEFENDANT:  Yes, my lord.

17             THE COURT:  Do you understand that if you do violate

18   the terms or conditions of supervised release and are returned

19   to prison, that new prison term could be for part or all of the

20   term of supervised release, and that you will not receive

21   credit for time previously served in prison or for time

22   previously served on a violation of supervised release?

23             THE DEFENDANT:  Yes, my lord, I understand.

24             THE COURT:  And do you also understand that as part of

25   your sentence, I can also order restitution to any person

MC5QiwoP

1   injured as a result of your conduct?  Do you understand that?

2            THE DEFENDANT:  Yes, my lord, I understand.

3            THE COURT:  Sir, do you also understand that if I

4   accept your guilty plea and find you guilty, that determination

5   may deprive you of certain valuable civil rights, such as the

6   right to vote, the right to hold public office, the right to

7   serve on a jury, the right to possess any kind of firearm and

8   the right to hold certain professional licenses.  Do you

9   understand?

10            THE DEFENDANT:  Yes, my lord, I understand.

11            THE COURT:  Now, Mr. Iwobi, the next series of

12   questions that we need to go over concern the rights that you

13   are giving up by pleading guilty, including your constitutional

14   rights.  So, again, do listen very carefully.

15            First, you have the right to be represented by an

16   attorney at trial and at every other stage of the proceeding.

17   If you cannot afford an attorney, an attorney would be

18   appointed to represent you without cost to you.  Do you

19   understand that?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  You have a right to a speedy and public

22   trial by a jury on the charges against you which are contained

23   in the information.  Do you understand that?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  At trial, you would be presumed innocent,

MC5QiwoP

and the government would be required to prove you guilty by

competent evidence beyond a reasonable doubt before you could

be found guilty.  You would not have to prove that you were

innocent at trial.  Do you understand that?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  If there were a jury trial, the jury would

be composed of 12 people selected from this district and all 12

would have to agree unanimously that you were guilty before you

could be found guilty.  Do you understand?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  At trial, you would have the right to see

and hear all of the witnesses against you, and your attorney

could cross-examine them.  Your attorney could object to the

government's evidence and offer evidence on your behalf.

          You would also have the right to have subpoenas issued

to compel witnesses to come to court to testify in your

defense.  Do you understand that?

          THE DEFENDANT:  Yes my lord.

          THE COURT:  At trial, you would have the right to

testify if you wanted to, but no one could force you to

testify.  And if you chose not to testify, I would tell the

jury that it could not hold that against you.  Do you

understand?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  If you were convicted at trial, you would

MC5QiwoP

1    have the right to appeal that verdict.  Do you understand?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Sir, do you also understand that by

4    entering a plea of guilty here today, you are giving up all of

5    the rights that I have just described, except for your right to

6    counsel, and you will be found guilty based solely on your plea

7    of guilty here today?  Do you understand that, sir?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Mr. Iwobi, do you understand that you can

10   change your mind right now for any reason and decide that you

11   did not want to enter a plea of guilty?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Now, sir, are you a United States citizen?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Now, the next series of questions that we

16   need to go over involve the Sentencing Guidelines.  So let me

17   begin by asking you, do you understand that there are

18   Sentencing Guidelines that I must consider in determining the

19   appropriate sentence in your case?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  And have you spoken with your lawyer about

22   how the guidelines apply to your case?

23             THE DEFENDANT:  Yes, I have, my lord.

24             THE COURT:  Mr. Iwobi, do you understand that I have

25   to calculate the applicable guidelines range and then consider

MC5QiwoP

1    that range in determining what your sentence will be?

2                    THE DEFENDANT:  Yes, my lord.

3                    THE COURT:  And do you also understand that I will not

4    be able to determine what your guidelines range will be until

5    after a presentence report has been drafted by the U.S.

6    Probation Office, and both you and your attorney and the

7    government have had a chance to review and comment on that

8    draft report?

9                    THE DEFENDANT:  Yes, my lord.

10                   THE COURT:  Do you further understand that even after

11   I calculate the applicable guidelines range, I have the ability

12   to impose a sentence that can be higher or lower than what the

13   guidelines recommend?  Do you understand that?

14                   THE DEFENDANT:  Yes, my lord.

15                   THE COURT:  And, Mr. Iwobi, do you also understand

16   that in addition to determining the applicable guidelines

17   range, I also have to consider a number of other factors set

18   forth in a law known as Title 18 of the United States Code,

19   Section 3553(a), which require me to consider, among other

20   factors, your history and characteristics and the nature of the

21   offense in determining the appropriate sentence in your case.

22   Do you understand that?

23                   THE DEFENDANT:  Yes, my lord.

24                   THE COURT:  So even after I determine the guidelines

25   range, I must also consider these other factors, and, again, I

MC5QiwoP

1   might settle on a sentence higher or lower than what the

2   guidelines recommend.  Do you understand that?

3          THE DEFENDANT:  Yes, my lord.

4          THE COURT:  Sir, do you understand that if your

5   attorney or anyone else has attempted to estimate or predict

6   what your sentence will be, their estimate or prediction could

7   be wrong?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And, sir, while it is perfectly

10  appropriate for you and your attorney to have discussed how the

11  sentence will be calculated, no one can give you any assurance

12  of what your sentence will be.  Do you understand that?

13         THE DEFENDANT:  Yes, my lord.

14         THE COURT:  Mr. Iwobi, I say all of this to you

15  because you need to understand today that if your sentence is

16  different from what your attorney or anyone else told you it

17  might be, or if it is different from what you expect, or if it

18  is different from what is contained in your agreement with the

19  government, you will still be bound by your guilty plea, and

20  you will not be allowed to withdraw your guilty plea.  Do you

21  understand that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Sir, do you understand that if you are

24  sentenced to prison, there is no parole in the federal system,

25  and you will not be released early on parole.  Do you

MC5QiwoP

1    understand that?

2                 THE DEFENDANT:  Yes, your Honor.

3                 THE COURT:  Now, the next series of questions that we

4    need to go over involve your agreement with the government.  I

5    have been given a document.  It's dated November 7, 2022.  It

6    has two exhibits.  The letter itself is six pages, and, again,

7    there are a number of signatures on page 6.  I'm going to raise

8    that up.  Do you see that from where you're seated, and is that

9    your signature on this page?

10                THE DEFENDANT:  Yes, your Honor.

11                THE COURT:  So this will be marked as Court Exhibit 2.

12                Mr. Iwobi, did you read this agreement before you

13   signed it?

14                THE DEFENDANT:  Yes, your Honor.

15                THE COURT:  Did you discuss it with your attorney

16   before you signed it?

17                THE DEFENDANT:  Yes, your Honor.

18                THE COURT:  Did you fully understand the agreement

19   when you signed it?

20                THE DEFENDANT:  Yes, your Honor.

21                THE COURT:  Does this letter include your

22   understanding of the entire agreement between you and the

23   government?

24                THE DEFENDANT:  Yes, your Honor.

25                THE COURT:  Is there any other agreement or any other

MC5QiwoP

1   promise about your plea or your sentence that is not contained

2   in this agreement?

3          THE DEFENDANT:  Yes, your Honor -- yes.

4          THE COURT:  Okay.  Let me ask that again.

5          Is there any other agreement, sir, or any other

6   promise about your plea or your sentence that is not written

7   down in this letter?

8          MR. OKEKE:  Your Honor, can you repeat the question

9   one more time for him, please?

10          THE COURT:  Absolutely.

11          Mr. Iwobi, is there any other agreement or any other

12   promise about your plea or your sentence that is not contained

13   in this agreement with the government?

14          THE DEFENDANT:  No.

15          THE COURT:  Sir, has anyone threatened you or forced

16   you to enter into the plea agreement?

17          THE DEFENDANT:  No.

18          THE COURT:  Other than what is in the agreement has,

19   anyone promised you anything or offered you anything to plead

20   guilty or to enter into the agreement?

21          THE DEFENDANT:  No.  No, your Honor.

22          THE COURT:  Sir, has anyone made a promise to you as

23   to what your sentence will be?

24          THE DEFENDANT:  No, your Honor.

25          THE COURT:  Now, sir, there is a stipulation in the

MC5QiwoP

agreement concerning the Sentencing Guidelines.  It's referred

to as the stipulated guidelines range.  Do you understand that

that stipulation binds you and it binds the government, but it

does not bind me, and I'm still going to make my own

determination as to what the applicable guidelines range is.

Do you understand that?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  In addition, there is an agreement in the

letter that says that if I sentence you within or below the

stipulated guidelines range, you're essentially giving up your

right to appeal the sentence that I impose.  Do you understand

that?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Mr. Pertz, would the government please

summarize what it would expect to prove if this case were to

proceed to trial?

          MR. PERTZ:  Yes, your Honor.  The government expects

that the evidence at trial would show the following in

substance and in part:

          From approximately 2019 through 2021, Obioma Iwobi,

the defendant, participated in a scheme to defraud the United

States Department of State by fraudulently receiving annuity

payments that were intended for state department retirees.  The

defendant and his co-conspirators obtained the retirees'

personal identifying information, opened straw bank accounts

MC5QiwoP

1    that the co-conspirators controlled, and contacted the state

2    department to request that the depositing account information

3    for the retirees be changed so that annuity payments would be

4    deposited into these straw accounts.

5           Once the funds were deposited into the straw accounts,

6    the defendant, knowing full well that the funds were

7    fraudulently obtained, then withdrew money from the straw

8    accounts, sending a portion of the funds to his co-conspirators

9    and keeping the rest.

10           The government is also prepared to prove by a

11    preponderance that venue is proper in the Southern District of

12    New York.  The government would show through internet protocol

13    logs that the co-conspirators used a virtual private network

14    server based in New York City to communicate with U.S.

15    Government database that held the bank account information for

16    the annuitants, and that that government server was located in

17    the state of Georgia.

18           THE COURT:  Thank you, Mr. Pertz.

19           Mr. Iwobi, did you hear what the prosecutor said?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Mr. Iwobi, have you clearly understood

22    everything that has happened today here so far?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Mr. Iwobi, will you please now tell me in

25    your own words what it was that you did that you believe makes

MC5QiwoP

1    you are guilty of the crime included in the information?

2              THE DEFENDANT:  I conspired with these subjects that I

3    would withdraw money to them and send them money overseas.

4              THE COURT:  Repeat that.

5              THE DEFENDANT:  I'm saying, I conspired with what you

6    said, that I got myself involved with the scam and actually

7    sent money to these guys overseas, yes.

8              THE COURT:  And the scheme, as I understand it,

9    involved retirees of the United States State Department; is

10   that correct?

11             THE DEFENDANT:  Yes, I ent -- yes.  Yes, sir.

12             THE COURT:  What was it that you did in connection

13   with that conspiracy, sir?

14             THE DEFENDANT:  My connection was have -- having

15   accounts, withdrawing money from their accounts, the fraudulent

16   accounts he mentioned to send the funds to these guys overseas.

17             THE COURT:  And so you had some control over the

18   fraudulent accounts?

19             THE DEFENDANT:  Correct.

20             THE COURT:  And you knew that the money that was going

21   into those accounts were monies that belonged to other people?

22             THE DEFENDANT:  Well, I -- yes.  Yes.

23             THE COURT:  And you withdrew those funds and sent part

24   of it to co-conspirators overseas?

25             THE DEFENDANT:  Correct.  They contacted -- yes, yes,

MC5QiwoP

1     sir.

2            THE COURT:  When did you do that, sir?  Approximately

3     when did you do that?

4            THE DEFENDANT:  Pretty much during the pandemic time

5     or from, like he said, 20 -- and in 2019 to 2021.

6            THE COURT:  When you did that, Mr. Iwobi, did you know

7     that what you were doing was wrong and against the law?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Did anyone threaten you or force you to do

10    those things?

11           THE DEFENDANT:  No, sir.

12           THE COURT:  Mr. Pertz, do you want to make a proffer

13    as to venue?

14           MR. PERTZ:  Yes, your Honor.

15           As the government stated earlier, the government would

16    proffer venue based on the existence of a virtual private

17    network server based in New York City, which communicated with

18    the government database in the state of Georgia.

19           In addition, while located outside of New York State,

20    the defendant and others used a background check website

21    headquartered in New York City to gather personal information

22    on the victims.  And while the defendant may not have known

23    directly the location of the virtual private network server or

24    the background check website server, the location or the use of

25    the server would have been reasonably foreseeable to the

MC5QiwoP

1    defendant because of the nature of the scheme.

2            THE COURT:  What is a background check website?  Is

3    that something that is legal?

4            MR. PERTZ:  It is.  It gathers information that is

5    public or at least publicly available and then others can

6    subscribe to the website and get that information.

7            THE COURT:  Very well.  Mr. Pertz, does either counsel

8    wish me to make any further inquiries.  Mr. Pertz?

9            MR. PERTZ:  Nothing from the government.  Thank you,

10   your Honor.

11           THE COURT:  Mr. Okeke?

12           MR. OKEKE:  No.  May I just have one minute with my

13   client?

14           THE COURT:  Sure.

15           (Defendant and defense counsel consult)

16           MR. OKEKE:  We have no objections.

17           THE COURT:  I'm sorry, you don't want me to make any

18   further inquiries, Mr. Okeke?

19           MR. OKEKE:  No.

20           THE COURT:  Mr. Okeke, do you know of any reason why

21   your client should not be permitted to plead guilty?

22           MR. OKEKE:  No, your Honor.

23           THE COURT:  Sir, do you believe there is an adequate

24   factual basis to support the plea?

25           MR. OKEKE:  Yes, your Honor.

MC5QiwoP

1          THE COURT:  Mr. Pertz, is there an adequate factual

2     basis to support the plea of guilty?

3          MR. PERTZ:  There is.

4          THE COURT:  Mr. Iwobi, how do you now plead to the

5     charge in Count One of the information?  Guilty or not guilty.

6          THE DEFENDANT:  Guilty.

7          THE COURT:  Are you in fact guilty of that charge?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  Are you pleading guilty voluntarily and of

10    your own free will?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  There is a forfeiture allegation in the

13    information.  Do you admit to the forfeiture allegation?  Yes

14    or no.

15         THE DEFENDANT:  I'm sorry, repeat that again?

16         THE COURT:  Yes.  There's a forfeiture allegation in

17    the information.  Do you admit to the forfeiture allegation?

18    Yes or no.

19         THE DEFENDANT:  Yes.

20         THE COURT:  I note for the record Exhibit A to the

21    plea agreement is a consent preliminary order of forfeiture

22    money judgment.  It has been signed by Mr. Pertz, Mr. Iwobi,

23    Mr. Okeke, and I have myself executed it now.  And Exhibit B is

24    a consent order of restitution.  Again, it's been signed by

25    Mr. Pertz, Mr. Okeke, Mr. Iwobi, and I myself have executed it

MC5QiwoP

1    as well.

2              With that, Mr. Iwobi, because you acknowledge that you

3    are in fact guilty as charged in the information, because I

4    find that you know your rights and are waiving them knowingly

5    and voluntarily with an understanding of the consequences of

6    your plea, including the potential sentences that may be

7    imposed, I accept your guilty plea and find you guilty of the

8    charge in the information.

9              I will now direct that a presentence investigation

10   report be conducted by the probation office and that a

11   presentence report be prepared.  You will be interviewed by the

12   probation office as part of that process, Mr. Iwobi.  You can

13   and should have your lawyer with you during that interview.  It

14   is also entirely possible that the probation department will

15   want to interview members of your family with whom you live.

16             The presentence report is a very important part in my

17   decision as to what your sentence will be.  You and your

18   attorney will receive a draft of that report.  When you receive

19   the draft, please review it very carefully and bring any

20   mistakes or discrepancies that you might find therein to my

21   attention through your attorney.  Your attorney and you will

22   also have the right to speak on your behalf before I impose

23   sentence.

24             Do we have a date for sentencing?

25             DEPUTY CLERK:  Yes.  March 8, 2023 at 3:30 p.m.

MC5QiwoP

1      THE COURT:  Mr. Okeke, if I could impose upon you to

2 coordinate with probation so the interview can take place as

3 promptly as possible.  I take it that Mr. Iwobi has not yet

4 gone through the bail process or what is his bail status,

5 Mr. Pertz, and what is the government asking for?

6      MR. PERTZ:  As the defendant is making his first

7 appearance today, he has not yet been assigned any conditions.

8 The government agrees with pretrial that bail is appropriate in

9 this case.  The government and the defense have not yet reached

10 any agreement as to the amount of the bond, but the government

11 would propose to the Court that bail be set with the conditions

12 that pretrial sets forth in the report.  And, in addition, a

13 bond in the amount of $75,000 be set with one financially

14 responsible party as cosigner.  The government would also

15 propose that the defendant be allowed to be discharged on his

16 own signature today with one week given to make the necessary

17 arrangements for the cosigner.

18      THE COURT:  Very well.  The recommendation from

19 pretrial services is pretrial supervision as directed,

20 surrender all travel documents and make no new applications,

21 travel restricted to the Southern District and Eastern District

22 of New York and to the Eastern District of Texas and points in

23 between for travel to and from court, mental health evaluation

24 and treatment, no new lines of credit or bank accounts without

25 the prior approval of pretrial services, and not to possess any

MC5QiwoP

1    personal identifying information of others.

2              Mr. Okeke, do you have any objections to those

3    conditions?

4              MR. OKEKE:  No, your Honor.  And I have defendant's

5    passport to turn in to pretrial services today.

6              THE COURT:  Ms. Harrison, anything more that you

7    require?

8              MS. HARRISON:  No, your Honor.

9              THE COURT:  Very well.

10             Because this is Mr. Iwobi's first time appearing, I

11   also have to comply with Rule 5(f) of the Federal Rules of

12   Criminal Procedure.  So, Mr. Pertz, I direct the prosecution to

13   comply with its obligation under *Brady v. Maryland* and its

14   progeny to disclose to the defense all information, whether

15   admissible or not, that is favorable to the defendant, material

16   either to guilt or to punishment and known to the prosecution.

17             Possible consequences for noncompliance may include

18   dismissal of individual charges or the entire case, exclusion

19   of evidence, and professional discipline or court sanctions on

20   the attorneys responsible.

21             I will be entering a written order more fully

22   describing this obligation and the possible consequences of

23   failing to meet it.  I direct the prosecution to review and

24   comply with that order.

25             Mr. Pertz, do you confirm that you understand your

MC5QiwoP

1    obligations and will fulfill them?

2          MR. PERTZ:  Yes, your Honor, the government confirms

3    these obligations and will fulfill them.

4          THE COURT:  Is there anything else we should do today,

5    Mr. Pertz?

6          MR. PERTZ:  Nothing from the government.  Thank you

7    very much, your Honor.

8          THE COURT:  Mr. Okeke, anything more from you?

9          MR. OKEKE:  No, your Honor.

10          THE COURT:  In that event, we are adjourned.  Here are

11    your original documents.  Folks can be at ease.  Just waiting

12    for the document to print.

13          (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25